WILLIAM D. COLE AND JOSEPH S. COLE, APPELLANTS, *v.* WILLIAM S. GOURLAY AND JOHN GOURLAY, RESPONDENTS.

*Concealment of will by heir — 1 R. S., 749, § 3 — rights of bona fide purchaser from heirs, in ignorance of will — Sale of infants' real estate — jurisdiction of Court of Chancery — execution of power.*

That portion of section 3 of 1 Revised Statutes, 749, which provides that where a will or codicil containing a devise shall have been concealed by the heirs of the testator, or some one of them, the limitation contained in that section shall not commence until after the expiration of one year from the time when such will or codicil shall have been delivered to the devisee, or his representatives, or to the proper surrogate, applies only to cases of concealment which leave the devisees in ignorance of the will and of their rights under it, and not to cases in which the will has come to the knowledge and possession of the devisees, or of those representing them, and is afterwards stolen or taken from them surreptitiously and secreted or destroyed.

In 1836, the plaintiffs' testator died leaving a last will and testament, by which he devised a life estate in certain premises to his wife, with remainder to his two sons, the plaintiffs herein. In the early part of 1841, one of the plaintiffs clandestinely removed the said will from his mother's trunk and concealed the same until 1855, when it was presented to the surrogate for probate. In the year 1841, proceedings were instituted in the Court of Chancery for the sale of the interests of the four minor children of the testator in the said premises, no mention being made therein of said will, and, in pursuance of an order of that court, the same were conveyed by the guardian of the infants and by the widow to one Sherman, who was a *bona fide* purchaser without notice of the will. The widow having died, this action was brought by the plaintiffs as devisees under the will to recover the premises from the defendants, who claimed the same as grantees of Sherman. *Held*, that this was not a case of the concealment of a will, provided for in the exception to said section 3, and that, as the will was not recorded within four years after the death of the testator, the title of the defendants was not defeated thereby.

By the will, the testator appointed his wife executrix thereof, and authorized her to sell and dispose of the real estate, if necessary, for the support and maintenance of the children. *Held*, that her joining with the guardian of the minor children, in the deed of bargain and sale, delivered to the purchaser, must be deemed a valid execution of the power of sale conferred by the will. (*Per* LEARNED, P. J., and BOARDMAN, J.)

In proceedings instituted in the Court of Chancery, under the provisions of the Revised Statutes, relating to the sale of the real estate of infants, it is not necessary that the infants themselves should join in the petition, it is sufficient if the application be made by their next friend or guardian.

Where the order made in such proceedings requires the conveyance to be exe-

cuted by the guardian in his own name and not in that of the infants, and a deed is accordingly made in compliance with the terms of such order, such deed is valid and effectual to pass the title of the infants.

APPEAL from a judgment in favor of the defendants, entered upon the trial of this action by the court without a jury.

This was an action of ejectment brought to recover the possession of certain land in the city of Ogdensburg.

*W. H. Sawyer,* for the appellants.

*Geo. Morris,* for the respondents.

BOCKES, J. :

If full force and effect be given to the will of Joseph Cole, the plaintiff's right of action is well established. Joseph Cole being seized of the premises, devised them to his wife Anna, for life, with remainder over to his two sons, the plaintiffs. Anna died October 30, 1873. The plaintiffs thereupon became entitled to the possession. But this is not the whole case. The testator died February 5, 1836, leaving him surviving, his widow, Anna, and four children, all minors, of whom the plaintiffs were two. In 1841 an application was made to the Court of Chancery, in behalf of the infants, for a sale of the premises, in which application the widow joined. This proceeding was taken on the hypothesis that the deceased died intestate, and was carried through to a sale, when one Socrates N. Sherman became the purchaser. The deed to Sherman bore date June 1, 1841, and was executed by the widow and by the guardian appointed by the court, to convey the interests of the infants. Sherman entered and occupied under his deed until 1846, when he conveyed to William Kendrick, under whom the defendants claim.

The will of Joseph Cole, above alluded to, was taken by the plaintiff William D. Cole from his mother's trunk, clandestinely, in the early part of the year 1841, and was retained, concealed by him about his person, until presented to the surrogate for probate, in 1855.

Now the defendants insist that they hold under a purchaser in good faith from the heirs at law of the testator, hence that the will is inoperative against them under the statute which provides as follows : " 1. The title of a purchaser in good faith, and for a valu-

able consideration, from the heirs at law of any person who shall have died seized of real estate, shall not be defeated or impaired by virtue of any devise made by such person of the real estate so purchased, unless the will or codicil containing such devise shall have been duly proved as a will of real estate, and recorded in the office of the surrogate having jurisdiction, or of the register of the Court of Chancery, where the jurisdiction shall belong to that court, within four years after the death of the testator, except: 1. Where the devisee shall have been within the age of twenty-one years, or insane, or imprisoned, or a married woman, or out of the State at the time of the death of such testator. Or, 2. Where it shall appear that the will or codicil containing such devise shall have been concealed by the heirs of such testator, or some one of them. In which several cases the limitation contained in this section shall not commence until after the expiration of one year from the time when such disability shall have been removed, or such will or codicil shall have been delivered to the devisee or his representative, or to the proper surrogate." (1 R. S., 749, § 3.)

It is certified as a fact in the record that neither Sherman nor Kendrick had knowledge of the will until after their purchase respectively, and it appears that such purchases were for valuable consideration. Each of them may, therefore, insist on the limitation declared in the statute cited, conceding that the deed to Sherman was a valid conveyance in law to pass the interest of the heirs of the testator in the premises; which subject will be hereafter considered. It is insisted, it is true, that Sherman purchased with knowledge of the existence of the will, but the evidence fails to show this. According to one of the witnesses, he admitted knowledge of the will soon after his purchase, but it is not proved that he knew or had notice of its existence when he purchased. I think it must be accepted, as certified in the findings of fact, that both Sherman and Kendrick purchased without knowledge of the existence of the will. But if Sherman was a *bona fide* purchaser for a valuable consideration, those taking title under him may have the benefit of his position, even though they might have purchased with notice. (*Webster* v. *Van Steenbergh*, 46 Barb., 211; *Wood* v. *Chapin*, 13 N. Y., 509.) Admitting then that Sherman was a *bona fide* purchaser from the heirs for a

valuable consideration, the next question is whether the limitation prescribed by the statute cited, has application to this case, and bars the plaintiffs' claim as devisees under the will.

In order that the will should have effect against a purchaser in good faith for value, from the heirs at law of the testator, it must have been recorded in the office of the surrogate having jurisdiction within four years after his decease: except (1), when the devisee shall have been a minor; (2), or insane; (3), or imprisoned; (4), or a married woman; (5), or out of the State at the time of the testator's death; (6), or when it shall appear that the will containing the devise shall have been concealed by the heirs of the testator, or some of them; in which several cases the limitation shall not commence until after the expiration of one year from the time when such disability shall have been removed; or the will shall have been delivered to the devisee or his representative, or to the proper surrogate. None of the above exceptions can have application here, save those marked (1) and (6). Let us then examine the case with a view to these two exceptions.

As to the first, the devisees (the plaintiffs) were within the age of twenty-one years when the testator died; therefore the limitation of four years would not commence to run against them until one year from the time the disability from infancy was removed in their cases respectively. The eldest became of age on the 13th of October, 1844, and the youngest on the 26th of June, 1847; now if the additional year be given to the four years limitation, then the full limitation of five years had expired after the disability was removed (even as to the youngest) before the will was recorded in the surrogate's office. The youngest became of full age June 26th, 1847; the will was admitted to probate and recorded April 5th, 1855; a period intervening of nearly eight years. Thus it seems that if effect be given to this exception, and an additional year be allowed, then the will became inoperative as against Sherman and those claiming under him, because not recorded within five years from the time the plaintiffs became of full age, conceding, of course, that he was a *bona fide* purchaser for value from the heirs.

Then how stands the case as regards this statute of limitations, in view of the other exception supposed to be applicable to it? Has this exception any application to the case in hand? In case

of a concealment of a will by heirs, the limitation provided by this statute would not commence, under the above exception, marked (6), until one year from its delivery to the devisee or his representative, or to the proper surrogate. The concealment alluded to in this exception has reference to a concealment at the time of, or succeeding, the decease of the testator; a concealment of the instrument from the devisees by an heir, by depriving them of knowledge of its existence. This exception has no application to a case where the will has come to the knowledge and possession of the devisees, or of those representing them, and is afterwards stolen, or taken, from them surreptitiously and secreted or destroyed. If taken and secreted or destroyed under such circumstances, the law affords relief at once against the wrong-doer. (2 R. S. [1st ed.], 67, § 63; 5th ed., p. 153, § 86; *Harris* v. *Harris*, 26 N. Y., 433; *Schultz* v. *Schultz*, 35 id., 653.) But this exception was intended for a case of concealment which should leave the devisees in ignorance of the will, and of their rights under it. Then did the will in this case come to the possession of the devisees, or their representatives, on or after the decease of the testator, and before it was taken and secreted by the heir? It seems that it was delivered to the widow, who was devisee of a life estate thereunder, and executrix therein named, at some time immediately after (perhaps before) the death of the testator; it is proved to have been in her possession, in her trunk with her papers, in 1841. Did she have it in her possession knowing of its existence as the last will and testament of her deceased husband? It would be remarkable, indeed, that she should have it in her trunk with her papers years after her husband's decease, and not know of its existence; and on the other hand it is somewhat remarkable that she should, knowing of its existence, join in the application for the sale of her children's interest in the property, as if her late husband had died intestate, swearing to the petition; when, too, a power of sale was given her in the will, in case a sale should be found necessary for the support of the minors; and further, that her interest in the premises was greater under the provisions of the will than it would be in case of intestacy. But on looking into the petition it will be seen that it is not stated that the deceased died intestate, except inferentially from the averment that the infants were each entitled to an undivided fourth part by

inheritance from their father, subject to their mother's right of dower. Nor does the fact that William took the will clandestinely from his mother's papers, prove that she did not know it was there; and further, it seems that its existence, and her possession of it, were known somewhat publicly, as is shown by the conversation in regard to it between Sherman and Gourlay, which conversation was had about the time of Sherman's purchase; and William knew of its existence and of his mother's possession of it, for he sought it out from among her papers and carried it away. It may be suggested by way of explanation of her action as regards the sale, that being aware of the fact that the will had been purloined, she joined in the application, under the supposition that its surreptitious removal and possible destruction, created a case of intestacy. On the whole the evidence tends to support the conclusion, and as I think this conclusion must be accepted as established, that the widow had the will in her possession, knowing the fact that it was her late husband's last will and testament, before, and probably for a long time before it was purloined by her son. Indeed the finding of fact in the record, is substantially to this effect. It it there certified that William took the will from his mother's custody and retained it until April, 1855. The widow was the proper person to have its custody. She was devisee thereunder; was named in it as executrix; and represented the minors, being by law their natural guardian. (2 Kent, 219.) This case was therefore one of a stolen will; or of a will taken clandestinely from its proper custodian (its existence being known to the latter), long after the decease of the testator; and not a case of *concealment* within the purview of the exception above cited. Again, if within the purview of this exception, then William certainly would be concluded by the limitation. It came to his possession, he being devisee, in 1841; and if given the full term of five years thereafter, or even five years after he obtained his majority, that time had elapsed before the will was probated. Thus it would not be operative in his favor against a *bona fide* purchaser from the heirs of the testator, in this view of the case. If it be suggested that it was not "delivered" to him, hence not within the letter of the law, the answer is ready and conclusive that his position is no better than it would be in case he had come to its possession fairly by delivery,

rather than by a dishonorable and culpable act. But as above stated we are of the opinion that this is not a case of the concealment of a will within the exception cited.

It follows from the conclusions above reached, that if Sherman was a purchaser in good faith for value from the heirs, then his title cannot, nor can the title of those claiming under him, be defeated or impaired by the devise to the plaintiffs, contained in the will under which they claim. The limitation declared in the statute must be held to defeat this claim. It has been already stated that both Sherman and Kendrick were *bona fide* purchasers, in so far as they purchased without knowledge of any adverse claim, and paid value, and that Sherman was to be deemed a purchaser *from the heirs* of Joseph Cole, in case the deed of conveyance to him shall be held to transfer their interest in the premises. This point remains to be considered. It is insisted that the deed by the guardian of the plaintiffs to Sherman was, and is, as to them, of no effect and void; that the proceeding in the Court of Chancery, pursuant to which the sale was had, was without jurisdiction. Several of the papers in the proceeding do not purport to have been signed by the proper party or officer. It is said that this objection rests on a misprinting of the case, but they became records of the court, and they were introduced as such, and were not objected to on the trial as defective in this particular. They cannot, therefore, be excepted to here, on that ground. How stands the case on the question of jurisdiction? The proposition is a sound one, that the Court of Chancery had no inherent jurisdiction to direct a sale of infant's real estate, and that its authority in that regard was derived solely from the statute. The statute provides that any infant seized of any real estate may apply to the court for its sale or disposition, and authority is given the court to order such sale and disposition, whenever it shall be made to appear satisfactorily to it that its disposition is necessary and proper, (1) for the support and maintenance of the infant or for his education; (2) or that the interests of the infant required or would be substantially promoted by such disposition, because of its exposure to waste or dilapidation; (3) or because wholly unproductive; (4) or for any other peculiar reason or circumstance. (2 R. S., 194, §§ 170, 175.) And the general mode of procedure is there given: And it is further

provided that all sales, etc., made in good faith, pursuant to the order of the court, shall be valid and effectual, as if made by the infant when he became of full age. Now the purchase by Sherman, in this case, and the conveyance to him, if within the authority of the statute, was, in legal effect, a purchase from the plaintiffs themselves. It is urged that the petition was informal and fatally defective, because the plaintiffs, then infants, did not join in it. But the statute does not require that the infants should join in the application personally. It declares that the application may be made by next friend or guardian. Nor is any particular form of application necessary in order to confer jurisdiction on the court, when the substance is given, so as to meet and answer the general requisites of the statute. (32 Barb., 48; 28 How., 408.) And even if the rules of the court, adopted to guide the practice, were not complied with, jurisdiction would not be lost, in case of a substantial compliance with all provisions of the law. In this case the application was made by a party representing the infants as their next friend, and in substance and effect (according to its statements), it was an application by the infants, or on their behalf. In this respect, therefore, there was a substantial compliance with the requisites of the statute. The petition stated the age, residence and condition of the infants; that they had no personal property, nor any real estate whatever, except that sought to be sold; that this was not worth over $600, exceeding the widow's dower therein; that its annual income did not exceed twenty-five dollars; and that partition was threatened. There were some other facts stated, supposed to bear on the question of the necessity and propriety of a sale. But it is quite manifest that the facts above given were sufficient to call for the exercise of judicial discretion, and to support the judicial conclusion declared. The court, therefore, acquired jurisdiction in the premises. So, too, it appears that there was, as regards the subsequent proceedings, grounded on the original petition, a substantial compliance with the requirements of the statute. But it is urged that the deed was not well executed; in this, that it was not executed in the name of the infants. It was, however, executed pursuant to the order of the court, which had authority to direct the mode of its execution, and the form of its execution was in strict compliance with such directions.

In conclusion, then, it seems that the court had jurisdiction to direct the sale, as appears from the record; and that all the substantial requisites of the statute in the application and subsequent proceedings to the execution and delivery of the deed to Sherman, were complied with. The plaintiffs were, therefore, divested of their title by those proceedings and the sale and conveyance made in pursuance of them; unless they may interpose the will as a basis of title; and this we have seen they cannot do, because it was not probated and recorded within the limitation required by law, to make it available to them against a *bona fide* purchaser from the heirs of the testator.

There are other points urged by the counsel for the respondent, on which he supposes the judgment appealed from should be sustained, to wit: that the sale and conveyance under the order of the court was effectual to pass the interests of the plaintiffs, regarding them as devisees under the will; also, that the deed being executed by the executrix should be held to be an exercise of the power of sale under the provisions of the will. But if correct in the conclusions above reached on the other branch of the case, these points need not be considered.

Judgment affirmed, with costs.

LEARNED, P. J., concurred in the foregoing opinion, and also held that the deed by the executrix gave title as an execution of the power contained in the will.

BOARDMAN, J., concurred in the opinion of BOOKES, J.; also in the view expressed by LEARNED, P. J.

LEARNED, P. J.:

The will of Joseph Cole gave to Anna a life estate in the premises, with power, if necessary, for the support and maintenance of the children before they became of age, to sell and dispose of the said real estate.

Before they were of age she executed to Sherman a deed of grant, bargain and sale of the premises in fee, and of all the right of the parties of the first part therein. In this deed Joseph Arnold, as guardian of the infants, and Hiram Wood, husband of one of the infants, joined as grantors.

Every instrument executed by the grantee of a power conveying an estate, * * * which such grantee would have no right to convey * * * unless by virtue of his power, shall be deemed a valid execution of the power, although such power be not recited or referred to therein. (1 R. S. [5th ed., m. p.], 737, § 144.)

The deed does not purport simply to release dower. It is a conveyance in fee, executed by Anna Harrington, the widow, and by the others above named. She could have conveyed in fee only by virtue of her power. The conveyance must be deemed a valid execution thereof.

Deeds of bargain and sale are to be deemed grants. (1 R. S. [5th ed., m. p.], 739, § 162.) Every grant is conclusive as against the grantor. (§ 163.)

She had power to sell. She intended to join in giving Sherman a good title, and in order to give him a good title she executed the deed. It would be most inequitable, since it has been discovered that she might have executed a valid deed in fee alone, to hold her deed ineffectual, because two other persons joined as grantors.

For these reasons I concur in the result that the judgment should be affirmed with costs.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment affirmed, with costs.