THE DIME SAVINGS BANK OF BROOKLYN, Plaintiff, *v.* HERBERT BERRI and Others, Defendants.

Supreme Court, Special Term, Kings County, March 12, 1941.

*Hutton & Holahan* [*Denis M. Hurley* of counsel], for the plaintiff.

*Leopold Friedman* [*Milton R. Weinberger* of counsel], for the defendant Putnam Theatrical Corporation.

*William C. Chanler, Corporation Counsel* [*Leo Lehrfeld* of counsel], for the defendant City of New York.

SMITH, J. This is an action brought pursuant to the provisions of the Real Property Law (§ 500) to compel the determination

of a claim to real property adverse to that of the plaintiff. Originally forty-nine defendants were joined in this action. Only two defendants, the city of New York and the Putnam Theatrical Corporation, answered; the other defendants defaulted. Plaintiff obtained a severance of the action against the defaulting defendants and has continued the action against the two answering defendants. The answer of the defendant city raises no issue. It merely asks that the judgment should define plaintiff's rights in the land claimed by plaintiff and the city's rights to that portion of Hanover place (lying beyond the area claimed by plaintiff) which has been in use as a public street. Plaintiff and the city have stipulated to the technical description of the land which shall constitute the public street. Therefore, the only adverse parties remaining in this action are the plaintiff and the defendant Putnam Theatrical Corporation (hereafter referred to as the defendant).

Plaintiff is the owner of the parcel of land on the southeast corner of Fulton street and Hanover place in Brooklyn. This parcel extends fifty feet along Fulton street and eighty feet along Hanover place. It has a substantial building which, on Hanover place, is set back ten feet from the building line. But since 1901 this ten-foot strip has been occupied by one-story show windows which extend beyond the building. Hanover place is a street which terminates on the north at Fulton street and on the south at Livingston street. Defendant is the owner of a parcel of land on the southerly side of Livingston street. This parcel is directly opposite Hanover place and is about 300 feet (289.8 feet exactly) south of plaintiff's parcel. Defendant has erected on its parcel a theatre (called the Melba), together with appropriate display and advertising signs. A substantial part of both the theatre and the signs are visible from Hanover place and Fulton street.

This ten-foot strip on Hanover place is valuable and plaintiff desires to utilize it by placing thereon a substantial structure instead of the existing one-story extension of show windows. Defendant, however, claims an easement of air, light and access over this ten-foot strip on Hanover place in favor of its land on Livingston street. The principal question for determination in this case is whether defendant has such an easement.

Defendant predicates its claim to the easement on two grounds: *First*, a certain deed of partition made in 1836. *Second*, an adjudication made in 1899 by the Appellate Division of the Supreme Court in this Department (*Zipp* v. *Barker*, 40 App. Div. 1; affd., 166 N. Y. 621) construing this partition deed. I will consider both grounds.

(1) The deed was made in 1836 between Anna Prince, Susan Lawrence and Margaretta Willoughby (the heirs of Johannes Debevoise), the original owners of a twenty-acre tract of land which is bounded, roughly, by Fulton, Nevins, State and Hoyt streets and which included both plaintiff's and defendant's parcel. Intersecting this tract of land and running east and west are Schermerhorn and Livingston streets and running north and south are Debevoise place (now Elm place), Bond street and Hanover place. The deed divided the tract into 189 lots and allocated among each of the three coparceners approximately one-third of the lots.

The deed contained a set-back restriction or covenant which gives rise to the present litigation. By this covenant the parties to the deed bound themselves, their heirs and ass'gns, not to erect any " dwelling house, storehouse or other building or structure of any kind or description whatsoever, excepting fences, * * * on any lot of ground fronting on or otherwise adjoining Debevoise Place, Bond Street northwardly of Schermerhorn Street, or Hanover Place," for the following distances: within fifteen feet from the lines or sides of Debevoise place so that the buildings placed fronting on this street (Bond street) shall, on each side, be uniformly distant forty feet from the center of the street; within seven feet six inches from the lines or sides of Bond street northwardly of Schermerhorn street so that the buildings placed upon the land fronting on this street (Bond street) shall, on each side, be uniformly distant thirty-two and one-half feet from the center of the street; and within ten feet from the lines or sides of Hanover place so that the buildings placed upon the land fronting on this street shall, on each side, be uniformly distant thirty-three feet and nine inches from the center of the street.

The parties to the deed further stated that " the intent and meaning " of this covenant " was to insure an open space of the several widths above mentioned between the lines of the buildings fronting on " the said streets " and the observance of uniformity in the locations of such lines " and at the same time " to leave the several owners and proprietors for the time being of the said lots and premises respectively at full liberty to enclose and improve as court yards or ornamental grounds the several spaces between fronts of such buildings and the lines " of the said streets.

Defendant contends that this restrictive covenant must be deemed to inure to the benefit of every one of the 189 lots into which this twenty-acre tract was subdivided, without regard to the fact that the greater portion of these lots, including defendant's, do not front upon Debevoise place, Bond street or Hanover place

and do not bear the burden of the restriction. I do not so construe this covenant.

In my opinion defendant's construction would enlarge the covenant far beyond the intent of the creators. It is clear that they selected these three streets out of all the streets and decided that only the buildings on these three streets shall be set back for the distances specified. They were interested in obtaining uniformity of the building line only on these streets. Why, we cannot say. Perhaps it was because they thought these three streets would remain residential. But in any event the creators of the restriction were, quite evidently, not concerned with the buildings in any of the other streets. They were not setting up a plan of development for the entire tract. If they were, as defendant urges, it is only reasonable to suppose that a set-back would have been required, to a greater or less degree, of the buildings in the other streets; or that some other restriction, perhaps of a different nature, would have been imposed. But the other streets were not even mentioned in the covenants and were left free and clear of all restrictions.

Had the draftsmen of this deed intended to bestow the benefit of this restriction upon lands not burdened thereby, they could readily have expressed such an intent by clear and unequivocal language. Their failure to do so makes it impossible to believe that they had any such intention, particularly when we note the elaborate details contained in the covenant and the obvious effort to define it with precision and to limit its scope. My conclusion is that this covenant must be construed as reciprocal; that is, those whose lands are burdened with the restriction are entitled to enforce it against other lands fronting on the same street which are similarly burdened. In other words, only those who bear the burden are entitled to share the benefit.

Defendant's interpretation of the covenant is based mainly on inference and conjecture; and it is a well-established rule that a vested right in real property should never be allowed to rest on inference or speculation.

(2) The decision of the Appellate Division of this Department (*Zipp* v. *Barker*, *supra*), upon which defendant relies, does not lend any support to its interpretation of the restrictive covenant in the deed. There, while the same covenant was before the court, both parties owned adjoining parcels on Elm place (formerly Debevoise place). Defendants, who owned the parcel on the northwest corner of Fulton street and Elm place, put a structure upon the fifteen-foot set-back on the Elm place side of their property, thereby shutting off from view plaintiff's property which adjoined defendants' on Elm street. Plaintiff brought suit to enjoin the

maintenance of this structure, claiming that it violated the restrictive covenant in the partition deed of 1836 and the easement which plaintiff obtained thereby. Defendants there contended that the covenant should not be enforced because the character of the neighborhood had " become so completely altered by the march of business," and because others have similarly encroached upon the strip of land and interfered with plaintiff's easement. The court held that such an easement and set-back restriction could not be affected by any change in the character of the neighborhood and that whether the property was devoted to a residential or business use was immaterial. The court also held that neither the failure of the plaintiff to object to the violation of the easement by others nor the consent of other property owners on Elm place to the use of the fifteen-foot set-back free from the restriction of the covenant, could affect plaintiff's right to restrain defendants' violation of the covenant.

The holding of the court went no further in the *Zipp* case than I have just mentioned. The right of the owner of any parcel (within the twenty-acre tract partitioned) which was not subject to the set-back restriction, to enforce it was not involved in the case, nor was it presented by any of the parties, nor was it decided by the court.

Accordingly, plaintiff is entitled to a determination that defendant, the owner of property fronting on the southerly side of Livingston street, acquired no easement or other right by reason of the restrictive covenant in the partition deed of 1836 relating to the erection of buildings on Debevoise place, Bond street and Hanover place. Such a determination makes it unnecessary to pass upon any of the other questions raised.

Of course, it may well be that defendant will be damaged if plaintiff erects a substantial structure upon this ten-foot strip. But if defendant acquired no right by virtue of the restrictive covenant in the partition deed then the access or view over plaintiff's property which defendant has enjoyed for many years is a benefit which it had by sufferance and not by right. Such a temporary enjoyment can never ripen into a permanent easement. It can be destroyed by plaintiff whenever it sees fit to make full use of its property.

Submit findings and judgment on notice. In accordance with the stipulation of the parties no costs will be awarded.